Jennifer L. Braster
Nevada Bar No. 9982
Andrew J. Sharples
Nevada Bar No. 12866
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
(T) (702) 420-7000
(F) (702) 420-7001
jbraster@naylorandbrasterlaw.com
asharples@naylorandbrasterlaw.com

Adam W. Wiers (*pro hac vice*)
Christopher A. Hall (*pro hac vice*)
Jones Day
77 W. Wacker Ave.
Chicago, IL 60601

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LOUIS A. CARDINALI, | Case No. 2:16-cv-02046-JAD-NJK |
| Plaintiff, | **EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND FOR SANCTIONS OF HAINES & KRIEGER, LLC** |
| v. | |
| PLUSFOUR, INC; RC WILLEY HOME FURNISHINGS; WEBBANK/DELL FINANCIAL SERVICES; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendants. | |

Experian's Motion explains how Haines and Krieger, LLC's ("H&K") response to the Court's Order demonstrated disdain for the discovery process embodied in the Federal Rules of Civil Procedure.  H&K's response is nothing short of galling—they effectively blame the Court for not holding their hand and specifically telling them what questions they had to answer, and they blame Experian for not phrasing questions in the precise fashion that their witness could answer.  But in a world where the witness has not even seen the actual webpage being discussed and, indeed, does not even know that H&K is a bankruptcy law firm or whether it enters into contracts with clients, the notion that the problem lies with the Court or the questioner and not the (coached) witness is a farce.  From the moment it first received Experian's subpoenas, H&K has made clear that nothing short of severe sanctions would convince it that it must cooperate in the discovery process.

## ARGUMENT

Despite H&K's best efforts to obfuscate, the issues presented in Experian's Motion are straightforward.  First, H&K must produce the documents requested in Experian's document subpoena because they are relevant and Experian has taken reasonable steps to minimize the burden on H&K.  H&K's sham affidavit, drafted in an obvious attempt to twist the Court's prior holdings, is woefully inadequate to preclude discovery.  Second, H&K's witness was unable to answer a host of questions that were well-within the scope of the deposition subpoena.  H&K's impossibly narrow read of the scope of Topic 2 of the subpoena (mirroring the contents already provided in Plaintiff's Affidavit) smacks of the intentional bad faith approach they have taken to responding to Experian's subpoenas and is belied by H&K's own briefing.  Finally, H&K's response leaves no doubt that sanctions should issue.  That H&K's designee could not answer virtually every question posed no matter how simplistic was no mistake, it was the game-plan.  That witness's newly offered affidavits leave little room to doubt that she could have answered many of the questions Experian asked, but chose not to, likely on orders from H&K.  The Federal Rules simply do not countenance this kind of abuse.  Moreover, the sanctions Experian seeks are

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

not severe, amounting only to holding H&K to their public advertisements, and forcing them to absorb the monetary costs their bad faith has caused.

## I.    EXPERIAN'S DOCUMENT SUBPOENA SEEKS RELEVANT INFORMATION AND EXPERIAN HAS SOUGHT TO MINIMIZE THE BURDEN ON H&K.

As the Court has already noted, there is little basis to question the relevance of the information sought by Requests 1 to 11 of Experian's Document Subpoena.  These Requests go directly to H&K's operations as a credit repair organization, and thus bear on Plaintiff's claims as well as that of any putative class member whose dispute also originated with H&K.  Undeterred, H&K argues that these Documents cannot be relevant because its witness (who previously testified under oath that she knows virtually nothing about H&K's operations) put an end to that inquiry. (*See* ECF No. 106 at 8-9).  The Court has already rejected this cart-before-horse approach.  (ECF No. 95 at 5; *see also* ECF No. 90 at 2 (H&K's Reply In Support of its Motion arguing that Plaintiff's declaration "removes an essential element" of H&K's CRO status).)  H&K cannot avoid discovery into its credit repair operations by simply asserting that they are not a CRO anymore than Experian can avoid discovery by simply asserting it did not violate the Fair Credit Reporting Act.

The Court has already explained that "[t]here is ample evidence already in the record" to establish the relevance of this discovery.  (*See* ECF No. 95 at 5:25-28.)  Nevertheless, H&K seeks to re-argue the issue and to prematurely decide the ultimate merits of Experian's CRO defense.[1] (ECF No. 106 at 5, 8-9.)  Regardless, the cases H&K relies on do not move the needle because in each of these cases, the issue of whether the attorney was also a CRO was not specifically addressed.  *See Younger v. Experian Info. Sols., Inc*., No. 2:15-CV-00952-SGC, 2017 WL 5465527, at *8 (N.D. Ala. Sept. 22, 2017); *Milbauer v. TRW, Inc.*, 707 F. Supp. 92, 94 (E.D.N.Y. 1989) (discussing TRW's argument that the attorney was a CRO, but not deciding the issue because "the Court can easily envision a case where the services of an attorney are needed").

---

[1] Although available as a sanction under Rule 37, Experian does not seek dismissal of Plaintiff's claim under 15 U.S.C. § 1681i.  Plaintiff remains free to argue later that his dispute triggered Experian's duties, notwithstanding the fact that it came from a CRO.

NAYLOR & BRASIER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

Unsurprisingly, H&K does not point out the persuasive authority that counters its position.  *See, e.g., Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 216 (E.D. Pa. 2007) (declining to certify a class under 15 U.S.C. § 1681i where law firm wrote dispute letters, but consumer signed and mailed them, presented individualized issues of whether the dispute was sent "directly"); *see also Rannis v. Recchia*, 380 F. App'x 646, 649 (9th Cir. 2010)(finding an attorney was a CRO and noting that "attorneys are credit repair organizations if they qualify under the CROA").  It is easy to imagine attorneys who, unlike H&K, are not a CRO because they do not advertise credit repair services, and whose practice does not consist of mailing thousands of letters and filing hundreds of FCRA cases in order to be compensated for their credit repair work.  The documents H&K will be forced to produce in response to Requests 1 to 11 will let the Court, and later the jury, assess the true nature of H&K's operations, without having to guess as to just how many disputes H&K sends (Requests 1, 7, 9) or how much money they make (Request 6) from these form disputes (Requests 1, 6).

Experian has also taken numerous steps to minimize the burden on H&K of complying with Experian's document subpoena.  (*See* ECF No. 98 at 14-15 (explaining Experian's efforts to minimize the burden).)  During the meet and confer process, H&K has always sought to avoid any production whatsoever, and has *never* suggested any alternative or modification to these Requests that would lessen the burden of compliance on H&K.  Only now, at the eleventh hour, does H&K try to explain how Experian's Requests are burdensome.  This is woefully short of the good-faith meet-and-confer process described in this District's Local Rule 26-7.[2]  Nonetheless, Experian remains willing to accept less than it is entitled to and stands by the compromises it offered in the meet-and-confer process.  (*See* ECF No. 98-1 at ¶ 15.)

---

[2] H&K's claims of burden are especially suspect in light of the similar claims it made with regard to the deposition.  (*See* ECF No. 85 at 19-20.)  There, it similarly claimed burden, but of course even after losing that argument, it endured no burden whatsoever as it put forward a witness who knew nothing and took hardly any steps to prepare.  (*See* ECF No. 98, Ex. A at 99:23-100:5.)  Either it was being untruthful about the burden it claimed, or it intentionally put forward a witness that would cause it no burden.

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

3 of 13

1    H&K further claims that this Court need only follow its prior holdings in *Barnum* and

2   *Ashcraft*, denying discovery where it required "manually retrieving and reviewing millions of

3   records." *See Barnum v. Equifax Info. Servs., LLC*, No. 2:16-cv-02866-RFB-NJK, 2018 WL

4   1245492, at *2 (D. Nev. Mar. 9, 2018); *Ashcraft v. Experian Info. Sols., Inc.*, No. 2:16-cv-02978-

5   JAD-NJK, 2018 WL 6171772, at *2 (D. Nev. Nov. 26, 2018); ECF No. 106 at 14.  That reliance

6   is misplaced here.  Experian is not asking H&K to sift through millions of records, but seeks only

7   reasonably accessible material directly relevant to its defense.  As this Court has explained, "[t]he

8   party seeking to avoid discovery bears the burden of showing why that discovery should not be

9   permitted." *Ashcraft*, 2018 WL 6171772, at *1.  "[I]t has long been clear that a party claiming that

10  discovery imposes an undue burden must allege specific facts which indicate the nature and extent

11  of the burden, usually by affidavit or other *reliable evidence*." *Barnum*, 2018 WL 1245492, at *2.

12  There is no reason to think that Ms. Ferranti's affidavit is the sort of reliable evidence courts rely

13  on in deciding discovery motions.

14    Initially, Ms. Ferranti's affidavit is a sham affidavit which contradicts her testimony,

15  written by H&K's lawyers solely to defeat Experian's motion to compel.  Were this case at

16  summary judgment, the Court would be right to disregard the affidavit entirely.  *See, e.g., Zurich*

17  *Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1229 (D. Nev. 2010) ("[a]t summary

18  judgment, a district court may disregard 'sham' affidavits that contradict deposition testimony")

19  (citation omitted).  At deposition, Ms. Ferranti initially testified that as H&K's office manager, she

20  filed cases, filed orders, and supervised staff.  (ECF No. 98, Ex. A at 13:19-23; 28:20-29:7.)

21  Nonetheless, she testified that she did not know a) if H&K maintains files on its clients (*Id*. at

22  140:6-21); b) whether H&K has agreements with Knepper and Clark, LLC (*Id*. at 33:25-34:14); c)

23  whether H&K tracks the time it spends on client matters (*Id*. at 134:8-12); d) whether H&K tracks

24  time it spends providing credit repair services (*Id*. at 134:13-17); e) whether H&K files lawsuits

25  on consumers' behalves (*Id*. at 94:5-13); or f) whether H&K tracks the revenue it receives from

26  litigation under the FCRA (*Id*. at 136:25-137:8).  Now, based on a cursory statement that she has

27  "become knowledgeable in additional procedures employed by H&K" she offers an affidavit

28

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

4 of 13

asserting that H&K cannot provide *any* of the discovery Experian seeks.  (*See* ECF No.  105-16.)  This reeks of a sham.[3]

Having testified under oath that she did not know this information, Ms. Ferranti cannot later change her testimony without adequate explanation.  Ms. Ferranti's explanation makes no effort to explain what steps she took to "become knowledgeable" in light of her total lack of knowledge at deposition, giving the Court no reason to credit her affidavit.  *See Zurich Am. Ins.*, 720 F. Supp. 2d at 1229 (explaining that determining whether an affidavit is a sham affidavit includes evaluating whether "the party submitting the affidavit or declaration provides a sufficient explanation for the contradiction").  Moreover, Ms. Ferranti's declaration bears little resemblance to the declarations in *Barnum* and *Ashcraft*, where declarants provided fulsome background explain the burden involved in responding to the discovery at issue.  (*See* Exhibit A (Declaration from *Barnum* providing nine paragraphs of foundational explanation); Exhibit B (Declaration from *Ashcraft* providing eleven paragraphs of foundational explanation).))  Ms. Ferranti's Declaration, by contrast provides no explanation as to *why* providing *any* of the sought-after discovery would be burdensome, and there is little reason to think that finding, for instance, the template H&K uses in sending disputes (Request 1);[4] or the form engagement letter H&K uses (Request 2) would require H&K "comb[ing] through all of its files."  (*See* ECF No. 106 at 15:7.)  Surely H&K is not forced to "comb through all of its files" every time it signs up a new client or every time it sends a dispute letter on a client's behalf—these documents are, of course, readily accessible to effectuate H&K's credit repair operations.

Ms. Ferranti's declaration betrays H&K's view: any compliance with the Federal Rules is too burdensome for H&K.  This is not an adequate basis to entirely resist the discovery Experian seeks, and the Court should compel compliance with Experian's document subpoena.

---

[3] Of course, should the Court choose, it could press Ms. Ferranti on this shifting knowledge base at a hearing on this matter.

[4] It appears that for at least sometime H&K used a template dispute letter.  *See* Exhibit C (dispute letters from Plaintiff to Experian and from Amy Cardinali to Equifax).

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

5 of 13

## II.   H&K FAILED TO ADEQUATELY PREPARE ITS RULE 30(B)(6) WITNESS IN GOOD FAITH

### A.   The Scope of Topic 2 Includes How H&K is Compensated, The Credit Repair Services It Offers, and Related Agreements.

As problematic as H&K's wholesale refusal to produce documents is, its behavior at its deposition, and defense thereof, is especially troubling.  H&K's response turns on an artificially narrowed reading of Topic 2 of Experian's deposition subpoena that this Court already rejected in H&K's Motion to Quash, and which runs counter to H&K's own briefing.  Topic 2 asked for testimony related to the *nature* of H&K's agreements, *formal or informal*, related to the sending of consumer disputes.  As explained in Experian's Motion, Experian has never been coy about what it was after and H&K was not confused: "As H&K understands Experian's position, Experian believes that it can infer 'compensation' from H&K's website content . . . Experian believes that because free consultations could lead to the opportunity to bring a lawsuit at a later time . . . H&K is procuring some vague 'benefit' . . . ."  (ECF No. 85 at 20:10-17.)  Experian was clear at the hearing on H&K's Motion to Quash: "Haines & Krieger's website, says . . . that they will help them send these kinds of disputes . . . then on the back end they'll sue if there's anything that doesn't get resolved . . . We think that is at least enough to suggest there's valuable consideration . . ."  And the Court understood, rejecting Plaintiff's declaration as to what constitutes consideration.  (*See* ECF No. 98 at 10:19-27.)  Yet, H&K insists that Topic 2 was limited to any fee arrangements for the mere act of writing and mailing the consumer's dispute.  (*See* ECF No. 105 at 4-5.)  Essentially, H&K claims that the Court's Order was not sufficiently detailed for it to understand what was expected of it.  (*See* ECF No. 105 at 5 (reading "three subtopics" into the Court's order and complaining "Experian never sought clarification of the Court's order")．)  The briefing, argument, and Order were all quite detailed—there was no mystery as to what was expected.

H&K's narrow reading of Topic 2 runs wholly counter to both the purposes of the Federal Rules of Civil Procedure generally, and Rule 30(b)(6) specifically.  "The Federal Rules of Civil Procedure creates a 'broad right of discovery' because 'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.'"  *Epstein v.*

NAYLOR & BRASIER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

6 of 13

1    *MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th

2    Cir.1993)). Accordingly, "[o]ne of the purposes of Rule 30(b)(6) is to curb any temptation a

3    corporation might have to shunt a discovering party from 'pillar to post' by presenting deponents

4    who each disclaims knowledge of facts clearly known to someone in the organization." *Great Am.*

5    *Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (quoting *Federal*

6    *Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn. 1986)).

7         H&K never complained that it did not understand the scope of Topic 2, never tried to

8    negotiate a narrower scope of this Topic, filed briefs acknowledging the scope, heard Experian

9    explain its position in open court, and never asked the Court to modify or limit Topic 2. Given

10    this extensive record, there can be no doubt that Topic 2 included questions designed to elicit

11    testimony about what H&K means when it advertises that it provides credit repair services

12    "*because* the FCRA says that those who violate the law must pay [H&K's] fees." (ECF No. 87-4

13    at 10.) Notably, the Court's Order denied H&K's Motion to quash without any modification to

14    the scope of Topic 2. (*See* ECF No. 95.)

### B.    H&K's Designee Could Not Answer Questions Within the Scope of Topic 2

16         A corporation responding to a 30(b)(6) deposition notice must make a "conscientious good-

17    faith endeavor to designate the persons having knowledge of the matters sought ... and to prepare

18    those persons in order that they can answer fully, completely, unevasively, the questions posed ...

19    as to the relevant subject matters." *Grahl v. Circle K Stores, Inc.*, No. 2:14-CV-305-RFB-VCF,

20    2017 WL 3812912, at *3 (D. Nev. Aug. 31, 2017) (citation omitted). There is no doubt that H&K

21    willfully failed to fulfill these duties.

22         H&K's designee did not know what kind of legal work H&K performs, (*see* ECF No. 98,

23    Ex. A at 59:20-25) or even whether H&K enters into engagement letters with its clients at all. (*id.*

24    at 125:5-14.) She did not know how much revenue H&K received from FCRA litigation (*id.* at

25    136:19-24), or even if H&K tracked that information (*id.* at 136:25-137:3). Ms. Ferranti even

26    testified that she made no efforts to understand what H&K means when it advertises that it offers

27    credit repair services for free *because* the FCRA says defendants must pay H&K's legal fees. (*Id.*

28

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

at 99:23-101:14).  Despite having been warned that "a deposition is not a take home examination" (ECF No. 95 at 9:10), H&K's designee was not prepared to answer follow-up questions based on the paltry answers she provided.  For instance, after testifying that H&K offers its credit repair services on a *pro bono* basis, Ms. Ferranti did not know if H&K reported that fact as required under Nevada's ethical rules.  (*See* ECF No. 98, Ex. A at 52:9-53:1.)  Likewise, when it became clear that H&K's strategy was to obstruct the deposition by having their designee answer "I don't know" to nearly all questions, Experian was forced to exhaust topics that should be uncontroversial, such as whether or not H&K is truthful in its advertising, yet the witness could not answer these questions either.  (*See id.* at 59:3-61:2.)

As allowed under the Federal Rules, Experian asked Ms. Ferranti other questions to discern her foundation and background (*e.g.* was Ms. Ferranti familiar with previous iterations of H&K's website that equated "Credit Repair" with the FCRA, whether she was nervous, etc.).  None of this was improper, and more to the point, does not change the fact that the vast majority of Experian's questions fall under the scope of Topic 2.  H&K's designee was not prepared to answer these questions as required under Rule 30(b)(6).

## III.    H&K COACHED ITS WITNESS TO PROVIDE NONRESPONSIVE TESTIMONY.

Discovery under the Federal Rules is "based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."  *Shoen*, 5 F.3d at 1292 (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  "When a deposition becomes something other than [question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit] because of the strategic interruptions, suggestions, statements, and arguments of counsel, ... it ceases to serve the purpose of the Federal Rules of Civil Procedure: to find and fix the truth."  *Luangisa v. Interface Operations*, No. 2:11-CV-00951-RCJ, 2011 WL 6029880, at *7 (D. Nev. Dec. 5, 2011) (citations omitted).  Despite these well-worn principles, H&K defends the *more than 440* objections it made *in less than 4 hours* by arguing that because

NAYLOR & BRASIER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

8 of 13

these were not speaking objections, it could not have improperly coached its witness.  (*See* ECF No. 105 at 14-15.)  According to H&K, the reason why its witness did know the answers to more than 280 questions was not improper coaching, but because a) Experian failed to adequately prepare H&K's designee for deposition (which, of course, was H&K's job, not Experian's), b) Experian's questions were confusing, or c) the Court did not adequately apprise H&K of the full scope of the deposition, and thus the witness was not required to answer questions H&K deemed outside the scope.  (*See* ECF No. 105 at 6-11.)

H&K disingenuously tries to defend the chorus of "I don't knows" by pointing to isolated incidents in Experian's 30(b)(6) depositions in other cases.  (ECF No. 105 at 16-20.)  This is an obvious and misleading red-herring.  There simply is no comparison between a witness who answers "I don't know" more than 280 times in the span of four hours, and witnesses who answer "I don't know" a handful of time over the course of 7 hour depositions.[5]  Further, Experian's argument is not that Ms. Ferranti was required to know the answer to all of Experian's questions, but rather that the pattern of "scope" objections and "I don't know" answers, particularly on foundational and uncontroversial issues is evidence of improper witness tampering, designed by H&K to obstruct the discovery process.

Taking H&K's insistence at face-value strains credulity and requires, among other things, believing that Ms. Ferranti really did not know a) if she was given a choice to testify (ECF No. 98, Ex. A at 5:24-26:2); b) why she was nervous (*id* at 22:8-11); c) what her job responsibilities include (*id.* at 13:24-14:21); d) whether her LinkedIn profile is accurate (*id.* at 47:21-48:5); e) what her job title is (*id.* at 48:7-14), f) if she interacts with clients about payment arrangements (*id.* at 30:9-19); g) if she has ever seen or reviewed engagement letters (*id.* at 30:20-32:7); h) what type of law H&K practices (*id.* at 56:7-23; 76:6-82:8), among other egregious examples.  H&K does not explain how it could possibly be true that its witness did not know the answer to these questions.

---

[5] In *Alexander*, the deposition started at 10:00 a.m., concluded at 4:44 p.m., and Experian's 30(b)(6) witness responded "I don't know" without providing a substantive answer approximately 13 times.  In *Hannon*, the deposition started at 10:05 a.m., concluded at 6:05 p.m. and the witness responded "I don't know" without providing substantive testimony approximately 18 times.

NAYLOR & BRASIER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

Indeed, most of these questions should be uncontroversial regardless of the answer. These questions did not require the witness to guess or estimate, and Ms. Ferranti had no problem asking Experian to restate questions where she claimed to be confused (triggered by "Argumentative" objections). (*See id*. at 29:23-30:2; 32:19-21.) Nor does H&K make any effort to try and explain why it was whenever its lawyer objected to a question on scope grounds, the witness invariably answered "I don't know."

There is no good reason for the Court to turn a blind eye to this naked misconduct. Not only have H&K's obstructive tactics flouted the Court's prior order and required the Court to address multiple unnecessary motions, they are clearly calculated to frustrate the purposes of discovery under the Federal Rules. It calls out for sanctions.

## IV.   H&K SHOULD BE SANCTIONED FOR THEIR CONDUCT.

Testimony at deposition is to "proceed as [it] would at trial." Fed.R.Civ.P. 30(c)(1); *see also Luangisa*, 2011 WL 6029880, at *6 (D. Nev. Dec. 5, 2011). ("Counsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them . . . counsel are operating as officers of th[e] court." ). There is little chance that, if this case proceeds to trial, the sorry spectacle of H&K's deposition would repeat itself because the Court would not tolerate it. Likewise, "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). Yet, H&K's response indicates that a shell game is exactly what they think discovery is. Despite making *more than 440* objections in a 4-hour deposition, H&K blames Experian's questioning. Despite a witness who claimed to not have knowledge of even her own personal mental state, H&K insists that Experian "got the answers it deserved." (ECF No. 105 at 2:2-4.) H&K even claims that it does not perform credit repair work (ECF No. 105 at 14), despite overwhelming and uncontroverted evidence to the contrary. This refusal to take discovery or compliance with Experian's subpoena's seriously requires sanctions.

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

10 of 13

1    Rule 37(b)(2)(A)(i) provides that a court may sanction a party for contempt by "directing

2    that the matters embraced in the order or other designated facts be taken as established for purposes

3    of the action, as the prevailing party claims."   Similarly, Rule 37(b)(2)(A)(ii) provides that the

4    court may "prohibit[] the disobedient party from supporting or opposing designated claims or

5    defenses, or from introducing designated matters in evidence."   Accordingly, a sanction finding

6    that H&K is a CRO, or at least preventing them from changing their testimony is appropriate here

7    as it is simply a recognition of the facts in the record.

8    The Credit Repair Organizations Act ("CROA") provides a simple test to define "credit

9    repair organization."   A CRO is any person who 1) "uses any instrumentality of interstate

10   commerce," (e.g. the Internet), 2) for the "express or implied purpose of improving a consumer

11   credit record," and 3) "in exchange for monetary or other valuable consideration."   *See* 15 U.S.C.

12   § 1679a(3).   H&K's own websites show that they meet this definition.   On their website H&K tells

13   consumers that H&K will "guide you every step of the way" in repairing errors on the consumer's

14   credit report.   (*See* ECF No. 85-4 at 10).   They do so "because the FCRA says that those who

15   violate the law must pay our fees." (*Id.*)   As Experian explained it its Motion, it is hardly a sanction

16   at all to simply find what H&K's website makes obvious: that H&K meets the definition of CRO

17   under the CROA.

18   Moreover, H&K's efforts to get Experian to withdraw its subpoena to the Nevada Bar

19   removes any room for doubt on this issue.   During her deposition, Ms. Ferranti, echoing H&K's

20   Motion to Quash, testified that H&K provides its credit repair services *pro bono*.   (*See* ECF No.

21   87 at 11:3-6 ("Experian also speculates that 'As H&K is not a non-profit charitable organization,

22   it seems fair to presume that it is not sending out dispute letters for its customers out of the

23   goodness of its heart.' . . . Presumably, Experian's attorneys are familiar with the concept of pro

24   bono work . . ."); ECF No. 98, Ex. A at 52:14-18.)   As the Nevada Rules for Lawyers mandate

25   reporting of *pro bono* service, Experian served a subpoena to the Nevada Bar seeking these

26   records.   Realizing it was caught, H&K offered another dubious affidavit from Ms. Ferranti in an

27   effort to convince Experian to withdraw its subpoena to the Nevada Bar.   This affidavit now admits

28

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

that H&K does not include its credit repair work on its *pro bono* reporting forms.  (*See* Exhibit D.)

Thus, the record is wholly undisputed on this point.  H&K does not provide credit repair services

*pro bono*, but rather in exchange for the valuable consideration it receives via legal fees paid for

in FCRA litigation.  There is no good reason in fact or law not to put an end to H&K's obstruction

by simply making the finding required by the factual record that H&K is a CRO.

Similarly, the other sanctions Experian seeks are in line with H&K's misconduct.  Should

the Court decline to make the factual finding that H&K is a CRO, preventing H&K from bolstering

the record to contradict its own websites is a minor sanction.  Likewise, forcing H&K to bear the

costs that their obstructive approach to responding to Experian's subpoenas is a fair sanction given

the baseless nature of H&K's resistance.

## CONCLUSION.

Experian respectfully requests that this Court enter an order compelling production from

H&K of all documents responsive to is Rule 45 document subpoena and sanctioning H&K for its

willful noncompliance of the Court's Order as described above.

DATED this 14th day of December, 2018.

NAYLOR & BRASTER

By: */s/ Jennifer L. Braster*
Jennifer L. Braster
Nevada Bar No. 9982
Andrew J. Sharples
Nevada Bar No. 12866
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

Adam W. Wiers (*pro hac vice*)
Christopher A. Hall (*pro hac vice*)
JONES DAY
77 W. Wacker Ave.
Chicago, IL 60601

*Attorneys for Defendant Experian Information Solutions, Inc.*

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

12 of 13

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of NAYLOR & BRASTER and that on this <u>14th</u> day of December 2018, I caused the document **EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND FOR SANCTIONS OF HAINES & KRIEGER, LLC** to be served through the Court's CM/ECF system addressed to the following counsel:

Matthew I Knepper
Miles N Clark
Knepper & Clark, LLC
10040 W. Cheyenne Ave. Suite 170-109
Las Vegas, NV 89129
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, NV 89123
Email: dkrieger@hainesandkrieger.com

Mohammed Omar Badwan
Sulaiman Law Group, Ltd.
2500 S Highland Ave Ste 200
Lombard, IL 60148
Email: mbadwan@sulaimanlaw.com

Thomas A. Zimmerman , Jr.
Matthew C. De Re
77 W. Washington St., Ste 1220
Chicago, IL 60602
Email: tom@attorneyzim.com
Email: matt@attorneyzim.com

Sean N. Payne
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
Email: seanpayne@spaynelaw.com

*Attorneys for Plaintiff*

/s/ Jennifer L. Braster
An Employee of NAYLOR & BRASTER

NAYLOR & BRASTER
ATTORNEYS AT LAW
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(702) 420-7000

13 of 13