# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Louis A. Cardinali,

    Plaintiff

v.

Plusfour, Inc., et al.,

    Defendants

Case No.: 2:16-cv-02046-JAD-NJK

**Order Re: Cross-Motions for Summary Judgment and Other Matters**

[ECF Nos. 140, 141, 144, 146, 156, 166, 183, 188, 190, 191, 192, 200, 203, 205]

Louis A. Cardinali asserts two claims for relief, alleging that credit reporting agency (CRA) Experian Information Solutions, Inc. violated the Fair Credit Reporting Act (FCRA)[1] when it failed to reasonably investigate his dispute about an account that had been discharged in bankruptcy and thereafter reported inaccurate information about that account.[2] Cardinali's first claim implicates two provisions of the FCRA: § 1681e(b)'s mandate that CRAs use reasonable procedures to ensure maximum possible accuracy of consumer-credit information and § 1681i(a)'s requirement that CRAs reinvestigate the accuracy of information in a consumer's credit file upon receiving a consumer's dispute notice. His second claim seeks declarations that Experian violated the FCRA and an injunction permanently enjoining Experian from doing so.

Discovery is closed and the parties have filed numerous motions. Cardinali moves for summary judgment on his first claim and Experian moves for summary judgment on both of Cardinalli's claims.[3] Cardinali moves for class certification and appointment of class counsel and to seal and unseal various judicial records.[4] He also moves to supplement his summary-

---

[1] 15 U.S.C. §§ 1681–1681x.

[2] ECF No. 57 (First-amended Complaint).

[3] ECF Nos. 140 (Cardinali), 146 (Experian).

[4] ECF Nos. 141 (for class certification), 144 (to seal), 156 (to unseal).

judgment motion.[5]  Experian moves to supplement both its response to Cardinali's class-certification motion and its summary-judgment motion.[6]

Non-party Haines & Kreiger, LLC (H&K)—one of five law firms who represent Cardinali in this case—also contributes to this well-populated docket.  H&K objects to Magistrate Judge Nancy J. Koppe's order compelling it to produce documents in response to Experian's FRCP 45 subpoena.[7]  Experian moves to seal documents associated with its response to that motion and renews its motion for sanctions against Cardinali's attorneys for their purported discovery abuses.[8]  Finally, H&K seeks leave to file a reply in support of its objection[9] and to redact the part of its response to the sanctions motion that quotes from documents that Experian seeks to seal.[10]

To prevail on his claim that Experian violated the FCRA, Cardinali must demonstrate that his credit report contained an inaccuracy.  Having carefully considered the arguments of counsel and the substantial record in this case, I find that Cardinali has not made this showing.  Nor has he raised a genuine dispute of fact about the lynchpin issue of inaccuracy.  I therefore deny Cardinali's motion for summary judgment and grant Experian's motion for the same relief.  This determination moots all other pending motions save those seeking to seal and unseal judicial records and two motions to supplement.  I grant those motions—in part as to unsealing—and direct the Clerk of Court to enter judgment accordingly and close this case.

---

[5] ECF No. 203.

[6] ECF Nos. 166, 191, 205.

[7] ECF No. 183.

[8] ECF Nos. 188 (to seal), 190 (for sanctions).

[9] ECF No. 192.

[10] ECF No. 200.

**Factual Background**

**A.      Bankruptcy discharge (April 2012)**

Cardinali voluntarily filed a Chapter 7 bankruptcy petition on January 26, 2012.[11]  On his schedule of creditors holding unsecured nonpriority claims, Cardinali listed Dell Financial Services (DFS) with a claim valued at $991 stemming from a charge account that he opened four years prior.[12]  The bankruptcy court granted Cardinali a discharge on April 30, 2012.[13]  DFS, through its agent, filed a proof of claim in the amount of $991.06 in Cardinali's bankruptcy case on May 29, 2012.[14]  In its final accounting to the bankruptcy court, the Chapter 7 trustee reported that DFS received a distribution of $83.60 from Cardinali's bankruptcy estate on its claim.[15]

**B.      Credit report (August 2015) and dispute letter (October 2015)**

H&K represented Cardinali in his bankruptcy case.[16]  Three years after discharge, H&K requested a copy of Cardinali's credit report from Experian.[17]  Cardinali received the report from Experian dated August 25, 2015, and after reviewing it with H&K, believed that his DFS account was being misreported.[18]  So, H&K wrote and sent a dispute letter to Experian on Cardinali's

---

[11] ECF No. 142-4 (Voluntary Petition).

[12] ECF No. 142-2 at 7 (Schedule F—Creditors Holding Unsecured Nonpriority Claims).

[13] ECF No. 142-3 (Discharge Order).

[14] *In re Cardinai*, 12-10854, Claim 11-1 (Bankr. D. Nev. May 29, 2012).  I take judicial notice of this document filed in Cardinali's bankruptcy case.

[15] *In re Cardinali*, 12-10854, ECF No. 28 at 4 (Bankr. D. Nev. Nov. 21, 2012).  I take judicial notice of this document filed in Cardinali's bankruptcy case.

[16] *See, e.g.*, ECF No. 146-2 at 175 (Voluntary Petition).

[17] *See, e.g.*, *id.* at 238–46 (Personal Credit Report dated Aug. 25, 2015), 100 (Cardinali Dep., 55:02–56:18).

[18] *Id.* at 101 (Cardinali Dep., 57:13–18).

behalf.[19]  Cardinali reviewed and signed the letter before H&K sent it.[20]  Included with the letter were copies of Cardinali's August 2015 credit report, the first three pages of his bankruptcy petition, and his Nevada-issued driver's license.[21]

The letter states that the DFS account "was discharged in [Cardinali's] [b]ankruptcy[,] which was filed on 1/26/2012 and discharged 4/30/2012, bearing docket No. 12-10854-bam in the District for [sic] Nevada.  There should be no derogatory reporting after the filing date.  Specifically, please remove the derogatory information for the following post-bankruptcy dates: Feb2012 and Mar2012 (CO–Charge Off)."[22]  The letter directs Experian to "[i]mmediately delete this account and the disputed derogatory information from [the] credit report."[23]  It states that "[t]he discharged debt should be reported with an account balance of $0 with a status of "current."[24]  "Further, there should be no post-bankruptcy activity reported on this account.  The date of last activity on this account should pre-date [the] bankruptcy filing date, 1/26/2012, since a default on this account occurred no later than the Bankruptcy filing date."[25]  The letter demands that "[a]ny post-bankruptcy derogatory information should be immediately deleted from [the] report."  Finally, it says that if Experian doesn't "immediately delete this from [Cardinali's] credit report, please include a 100[-]word statement in [his] credit report of all the disputed information contained in this letter regarding this account."[26]

---

[19] *Id.* at 104–105 (Cardinali Dep., 71:08–74:02).

[20] *Id.*

[21] ECF No. 142-4 at 6–25.

[22] *Id.* at 5.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

## C.    Reinvestigation (October 2015)

Experian's internal records state that it received and addressed Cardinali's dispute letter on October 19, 2015.[27]  The records also state that the dispute agent resolved the matter "[i]nternal[ly]" and under Experian's "[b]ankruptcy [p]olicy."[28]  Mary Methvin, who works as a Senior Legal and Compliance Analyst in Regulatory Compliance for Experian and also serves as its FRCP 30(b)(6) witness here, declares that the agent "made several internal updates to the [DSF] [a]ccount to confirm its accuracy."[29]  First, the agent "reapplied the 'CII' code for a Chapter 7 discharge" and then he "updated the 'last report date' for this information from August 31, 2015, to April 30, 2012, the date of [Cardinali's] discharge order."[30]  After processing these changes, the agent also "added a consumer dispute statement to the account as the letter requested."[31]

Methvin explains that CII stands for "Consumer Information Indicator" and is how an account is coded in Experian's systems to report information to third parties like that the account was "discharged in Chapter 7" and now has a "$0 balance and no monthly payment obligation."[32]  The formatting language for that code is called Metro 2 and is what creditors like DFS must use when furnishing information to CRAs about a consumer's debt.[33]  Methvin explains that Metro 2's formatting language is described in the Credit Resource Reporting Guide

---

[27] *See* ECF No. 143-7 (sealed).

[28] *Id.*

[29] ECF No. 149-1 at 25, ¶ 42 (Methvin Decl).

[30] *Id.*

[31] *Id.* at 25, ¶ 43.

[32] *Id.* at 20, ¶ 13.

[33] *Id.* at 19–20, ¶¶ 8, 13.

1  (CRRG)—a guide that's created and published by an international trade association representing,
2  among other entities, the consumer-credit industry.[34]

3      Methvin declares that the updates that Experian's dispute agent made "automatically
4  generated a DRN [that] was sent to" DFS informing it "of the dispute and specifically showed
5  [DFS] how the account was reporting before and after Experian's updates."[35]  Methvin explains
6  that a DRN, which stands for "Dispute Response Notification" and is also known as a "DR
7  Notification," is a notice that Experian sends to data furnishers like DFS through an online portal
8  called e-Oscar.[36]  Experian sends a DRN when it internally resolves a dispute.[37]  According to
9  Methvin, "Experian's systems are configured so that any time it internally updates tradeline data
10 in response to a consumer dispute, it automatically sends a DRN to the furnisher[,]" i.e., the
11 person or entity who provides Experian information about the account, "describing the
12 changes."[38]  Methvin declares that "[d]ata furnishers are instructed to review the DRN and
13 contact Experian if they have any questions or concerns about" its contents.[39]

14 **D.    Reinvestigation credit reports (October 2015)**

15      After the dispute agent finished his work, Experian issued two credit reports to Cardinali
16 dated October 19, 2015.[40]  The first report explains that "[w]hen you use credit, a record of your

17

18

---

19 [34] *Id.* at 19, ¶ 8; *accord* ECF No. 142-16 at 3 (Credit Resource Reporting Guide).

20 [35] ECF No. 149-1 at 25, ¶ 42.

   [36] *Id.* at 21, ¶¶ 18–20.

21 [37] *Id.* at ¶ 18.

22 [38] *Id.* at ¶ 20.

   [39] *Id.* at ¶ 21.

23 [40] ECF No. 142-6 at 2–15 (Report No. 0405-5428-19); ECF No. 142-6 at 16–21 (Report No. 1210-8791-66).

payment history is stored along with the respective account."[41]  It also explains that "[t]he monthly payments leading up to a bankruptcy discharge tells that account's history.  Unless the history is inaccurate, it cannot be deleted.  Accounts included in a bankruptcy (other than those under Chapter 13) will no longer indicate that a balance is owed."[42]  This report contains a summary showing the revisions that Experian made to Cardinali's credit file in response to its processing of his dispute.[43]  It states that the information for the DFS account has been "updated," which the report explains means that "[a] change was made to this item; review this report to view the change.  If ownership of the item was disputed, then it was verified as belonging to you."[44]

The first report lists information for the accounts in Cardinali's file, separating between "accounts that may be considered negative" and those that are in "good standing."[45]  The first category is separated into "Public Records" and "Credit Items" subcategories.  Cardinali's bankruptcy case is listed under public records, including its "[s]tatus" as "Chapter 7 bankruptcy discharged[,]" its "[d]ate filed" as "Jan 2012[,]" and its "[d]ate resolved" as "Apr 2012."[46]  Turning to the credit items subcategory and, specifically, the information listed for the DFS account, the first report states that the "[s]tatus for this account is "[d]ischarged through [b]ankruptcy Chapter 7.  This account is scheduled to continue on record until Jul 2017.  This

---

[41] ECF No. 142-6 at 2.  The parties call this report a "CDF Full" or CDF-F."

[42] *Id.*

[43] *Id.* at 3.

[44] *Id.*

[45] *Id.* at 5, 9.

[46] *Id.* at 5.

item was updated from our processing of your dispute in Oct 2015."[47]  The last sentence did not appear on the August 2015 report, but the first two did.  The only other visible difference for the DFS account between this report and the one issued in August 2015 is that the "[r]ecent balance" was updated from "$0 as of Jul 2015" to "$0 as of Aug 2015."[48]

The second October 2015 report states that Experian "can add a statement to [Cardinali's] personal credit report that sets forth the nature of [his] dispute as required by the FCRA[,]" but Experian "cannot add a statement that is abusive or obscene, or a statement that does not set forth the nature of a dispute."[49]  So, the report explains, Experian "revised the statement [that Cardinali] submitted to comply with these rules" and "added the revised statement to [his] personal credit report."[50]  The second report tells Cardinali to review the statement and instructs him how to submit another one if he so desires.  Like the first report, the second one states that the DFS account has been "updated."[51]  It provides the same information for the DFS account as the first report, but includes a new "[y]our statement" section, which states: "account included in BK7 filed 01/26/2012 and discharged 4/30/2012 – Docket No 12-10854-bam in the District for Nevada."[52]

**E.      Complaint (August 2016)**

Methvin declares that Experian's internal records show what happened next: DFS stopped its monthly reporting of the account after September 2015 and instructed Experian to

---

[47] *Id.* at 9.

[48] *Compare* ECF No. 142-4 at 11, *with* ECF No. 142-6 at 9.

[49] ECF No. 142-6 at 16.  The parties call this report a "CDF Abbreviated" or "CDF-A."

[50] *Id.*

[51] *Id.* at 17.

[52] *Id.* at 18 (capitalized emphasis omitted).

delete the account from Cardinali's file on March 24, 2016.[53]  Experian removed the account on that date as DFS instructed, and it has not appeared on any report for Cardinali since.[54]

However Cardinali, dissatisfied with the results of Experian's reinvestigation, filed his complaint in this case on August 29, 2016,[55] which he later amended to assert class allegations and remove defendants.[56]  Cardinali claims that Experian violated § 1681i(a)'s reasonable-reinvestigation requirement by reporting inaccurate information about the DFS account[57] and failing to notify DFS about his dispute.[58]  Cardinali also claims that, by failing to notify DFS about his dispute, Experian failed to conform its reinvestigation to industry-wide practice and thus violated § 1681e(b)'s mandate that CRAs follow reasonable procedures designed to ensure maximum possible accuracy of information concerning the person about whom the report relates.

## Discussion

## A.    Summary-judgment motions [ECF Nos. 140, 146]

### 1.    Legal standards for cross-motions for summary judgment

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[59]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[60]  If the moving party satisfies its

---

[53] ECF No. 149-1 at 25–26, ¶ 45.

[54] *Id.*

[55] ECF No. 1.

[56] ECF No. 57.

[57] *Id.* at ¶¶ 28–47.

[58] *Id.* at ¶¶ 48–70.

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[60] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[61]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[62] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[63] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[64] The movant need only defeat one element of the claim to garner summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[65] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[66]

---

[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[62] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[63] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

[64] *See, e.g.*, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[65] *Celotex*, 477 U.S. at 322.

[66] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## 2. Cardinali fails to establish that the October 2015 reports are inaccurate.

To sustain a claim under either § 1681e or § 1681i, "a consumer must first make a prima facie showing of inaccurate reporting by the CRA."[67] Information is inaccurate for purposes of these statutes if it is either "patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."[68] Patently incorrect means, "at the very least, information that is inaccurate on its face . . . ."[69]

Cardinali argues that three items of information in the October 2015 reports are patently incorrect and materially misleading: (1) Experian's statement that it updated the reporting of the DFS account, (2) Experian's reporting the "recent balance" as "$0 as of Aug 2015," and (3) Experian's reporting charge-off notations during his bankruptcy case and over multiple months.[70] Cardinali couches some of his arguments for why this information is inaccurate as undisputed material facts.[71] This is improper.[72] Nevertheless, I address each argument in turn.

### a. Experian's statement that it updated the DFS account

Cardinali first takes aim at Experian's representation that it "updated" the reporting of the DFS account as a result of processing his dispute letter.[73] He argues that this statement is materially misleading because it "presupposed that Experian had completed a fulsome

---

[67] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quotations omitted).

[68] *Id.* (quotation omitted).

[69] *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (quotation omitted).

[70] ECF No. 140 at 19–22.

[71] *See id.* at 10–13 (blending argument with statements of fact).

[72] *See* LR 56-1 (requiring a "concise statement setting forth each material fact to the disposition of the motion that the party claims is or is not genuinely in issue" and the pleading or evidence on which the movant relies).

[73] ECF No. 140 at 20.

reinvestigation process [that] involved [DFS's] input and response."[74]  Assuming without

deciding that this statement in the "Notice of Results" part of the October 2015 reports qualifies

as credit-report data,[75] I'm at a loss to understand how it implies that DFS provided input in

resolving the dispute.  That fact isn't implied by operation of the FCRA.  CRAs are required to

provide prompt notice of a consumer's dispute to the furnisher of the disputed information,[76] but

nothing in the FCRA prohibits CRAs from resolving consumer disputes internally and notifying

the furnisher of both the consumer's dispute and Experian's resolution.  So, I turn to the reports

themselves, which explain that "updated" means that "[a] change was made to this item; review

this report to view the change.  If ownership of the item was disputed, then it was verified as

belonging to you."[77]  The last sentence is the only part of the definition that arguably implies that

DFS provided input, but that sentence isn't applicable here because Cardinali didn't dispute

ownership of the DFS account.  In fact, by disputing that this debt "was discharged in my

[b]ankruptcy[,]"[78] Cardinali tacitly acknowledged that the debt was his.  Cardinali's evidence

doesn't support his argument that this statement is misleading.

Cardinali also argues that this statement is patently incorrect.  But the undisputed

evidence shows that Experian did make several changes to the DFS account.  It internally

reapplied the CII code for a Chapter 7 bankruptcy discharge, updated the reporting date for that

---

[74] *Id.*

[75] Experian argues that Cardinali must "demonstrate an inaccuracy in his actual *credit report
data* even when the claim is about the contents of dispute results."  ECF No. 149 at 13 (citing
*Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089, 1099–1100 (N.D. Cal. 2008), *aff'd*
629 F.3d 876 (9th Cir. 2010)).

[76] 15 U.S.C. § 1681i(a)(2)(A).

[77] ECF No. 142-6 at 3.

[78] ECF No. 142-4 at 5.

information to match the discharge date, added a "your statement" section to the account, and updated the "[r]ecent balance" to "$0 as of Aug 2015."[79]  So, the evidence fails to support Cardinali's argument that this statement is inaccurate on its face.

To the extent Cardinali contends that the October 2015 reports were patently incorrect because Experian didn't notify DFS about his dispute,[80] the evidence doesn't support this theory, either.  Cardinali relies on the fact that Experian hasn't produced a copy of the DRN it says was automatically sent after its dispute agent updated the DFS account.  He also relies on the declaration of Megan Bartlett, a Senior Litigation Paralegal at Dell, Inc., of which DFS is a "direct subsidiary[,]" who declares that she has "personally verified that, as of November 21, 2016, DFS's e-Oscar account did not reflect any records, in the ACDV tab or otherwise, indicating the manner in which the [DFS account] was being reported has been disputed."[81]

Experian admits "that[,] in the normal course of its business[,] it does not preserve [DRNs] beyond the 120 days [that] those [n]otifications remain available through e-Oscar."[82] Cardinali provides no evidence to refute that the lifespan of a typical DRN in e-Oscar is 120 days.  This means that, in the ordinary course, a DRN sent on October 19, 2015, wouldn't be available through e-Oscar after February 16, 2016.  Cardinali doesn't provide evidence to show

---

[79] ECF No. 142-6 at 9, 18; ECF No. 149-1 at 25, ¶¶ 42–43.

[80] Cardinali vacillates between arguing that Experian sent a DRN "nanoseconds" after it finalized its reinvestigation and disputing that Experian sent that notice.  *Compare* ECF No. 140 at 6:01–02, *with* ECF No. 140 at 10, ¶ 15.

[81] ECF No. 142-5 at 2, ¶¶ 2, 4 (Bartlett Decl).  The Participant Guide for e-Oscar explains that ACDV stands for "Automated Consumer Dispute Verification" and data furnishers can use e-Oscar to, among other things, "[v]iew and respond to disputes (ACDVs)" and "[r]eview [n]otifications" like DRNs.  ECF No. 142-14 at 5, 7 (Participant Guide).

[82] ECF No. 142-21 at 5 (Experian's Answer to RFA # 29); *accord* ECF No. 142-27 at 21, 74:08–16 (Methvin testified that Experian doesn't retain copies of DRNs but e-Oscar retains them for 120 days).

that this DRN fell outside of the normal course of Experian's business.  Bartlett's declaration that she couldn't find a record of the DRN on e-Oscar in November 2016, which is over nine months after its natural expiration date and three months after Cardinali initiated this lawsuit,[83] doesn't raise a factual dispute about whether Experian sent that notice to DFS.  In sum, Cardinali hasn't demonstrated that Experian's statement that it updated the reporting of his DFS account is patently incorrect or materially misleading, nor has he raised a genuine factual dispute about the accuracy of that statement.

### b.    *Experian's reporting the recent balance as $0 as of August 2015*

Cardinali next argues that Experian's reporting "$0 as of Aug 2015" for the "recent balance" of the DFS account is misleading because it suggests that the account "had gone to $0 sometime *after* his bankruptcy discharge in 2012, which [isn't] true."[84]  Cardinali contends that Experian should have reported a $0 balance as of the date of his bankruptcy petition—January 26, 2012.[85]  Experian responds that Cardinali didn't allege this issue in his operative pleading, so he cannot obtain summary judgment on it now.[86]  This is not an accurate statement of the law.  The Ninth Circuit instructs that when issues raised at summary judgment fall "outside the scope of the complaint," the district court must construe the matter as a request to amend the pleadings under FRCP 15(b).[87]  Assuming without deciding that this is a colorable theory of inaccuracy, i.e., that Cardinali should be given leave to amend to include it, I consider the parties' arguments about its merits.

---

[83] ECF No. 1 (Complaint, filed August 29, 2016).

[84] ECF No. 140 at 21.

[85] *Id.* at 12, ¶ 21.

[86] ECF No. 149 at 12 (*comparing* ECF No. 140 at 21, *with* ECF No. 57 at ¶ 28).

[87] *See, e.g., Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

To support his contention that Experian's reporting of a "[r]ecent balance" as of "Aug 2015" is misleading, Cardinali proffers his expert Dean Binder's opinion that any negative or balance reporting after a bankruptcy petition has been filed is inaccurate because it violates 11 U.S.C. § 362(a)'s automatic stay. I disregard Binder's opinion on this issue because it is a legal conclusion.[88]

Cardinali also provides Experian's expert Marsha Courchane's deposition testimony to support his position, whom he contends conceded that Experian's reporting didn't reflect the month that the DFS account reached $0 balance.[89] But a closer look at her testimony shows that it doesn't support Cardinali's characterization. Courchane was asked whether it was her "opinion that the recent balance field . . . reflects the months at which the account balance became zero balance?"[90] She responded, "[n]o. It became zero balance on April 30, 2012," the date of Cardinali's discharge, "but it was zero balance as of August 2015. That is a recent balance."[91] Experian explains what this exchange means: Cardinali is wrongly conflating "recent balance," which Experian clarifies is "the most recent time [that] balance information was reported to [it][,]" with "'date of status,' which in this case represents the date of the . . . bankruptcy discharge."[92] Cardinali's expert testified in deposition that "recent balance" means what Experian claims it does: the last time that information about the balance was reported to

---

[88] *See infra* Discussion (A)(2)(c)(3).

[89] ECF No. 140 at 12, ¶ 21 & n.90 (citing ECF No. 143-20 at 29 (sealed), Courchane Dep. at 106:14–20).

[90] ECF No. 143-20 at 29 (sealed), Courchane Dep. at 106:14–17).

[91] *Id.* (Courchane Dep. at 106:18–20).

[92] ECF No. 149 at 12.

Experian.[93]  It can be logically inferred from this evidence that "recent balance" is a term of art with a defined meaning for the audience of these reports.

Cardinali doesn't dispute Experian's definition for this term nor his apparent confusion. Instead, he asks in reply why the CRA would even report when the balance was last reported to it, and he posits that's a question for the jury.[94]  Thus, Cardinali's argument about this reporting didn't come into clear focus until his summary-judgment reply brief.  But an argument raised for the first time in a reply brief is not something a judge must consider.[95]  Regardless, because this belated argument is merely an open-ended question that isn't supported by authority or evidence, it does not establish that this reporting was inaccurate as a matter of law, nor does it raise a triable issue of fact about its accuracy.  So, I turn my attention to Cardinali's remaining arguments for why the October 2015 reports are inaccurate, all of which concern Experian's manner of reporting charge-off notations in the payment history grid for the DFS account.

### c.    Experian's reporting of delinquencies after a bankruptcy petition is filed

Cardinali filed his bankruptcy petition in January 2012 and was discharged in April 2012. For the two months that Cardinali's bankruptcy case was pending but before his debts were discharged—February and March 2012—Experian reported "CO" for "charge off" in the payment-history grid for the DFS account.  The charge-off notations for those months appear on both October 2015 reports.  Cardinali argues that this reporting is inaccurate because the charge-off notations "created the impression" that he was still liable for the debt but he wasn't because it

---

[93] ECF No. 149-2 at 95:3–13.

[94] ECF No. 155 at 4.

[95] *C.f. Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

is undisputed that debt was discharged in bankruptcy.[96]  Cardinali cites two cases to support this proposition—*In re Torres* and *Montgomery v. PNC Bank, N.A.*[97]  He also relies on his expert Dean Binder's report.[98]  I begin with the cases.

### 1. *Cardinali's legal authorities are factually distinguishable.*

*In re Torres* concerns adversary proceedings filed by two debtors against Chase Bank.[99] The debtors, who had received discharges in their Chapter 7 bankruptcy cases, alleged that the bank refused to update its disclosures to note the effect of the debtors' discharges.[100]  The debtors alleged that their credit reports "continued to show a current balance owing to Chase" and described the debt as "Account charged off/Past due 150 days" for one debtor and "Charged Off as Bad Debt" for the other.[101]  The court found that the debtors' credit reports "contain[ed] no notation of the effect of [their] bankruptcy cases on [their] indebtedness to Chase."[102]  The debtors claimed that the bank's refusal to include that information violated the bankruptcy-discharge injunction and the FCRA and amounted to defamation.[103]

The bank moved to dismiss all of the debtors' claims.  The bankruptcy court found that it lacked subject-matter jurisdiction to consider the debtors' FCRA and defamation claims, so it

---

[96] ECF No. 140 at 20–21.  Cardinali doesn't contend that the account wasn't charged off by DFS nor does he contend that DFS didn't report to Experian, month after month, that the account's payment status was charged off.  ECF No. 57 at ¶ 28 (alleging why the charge-off notations are inaccurate).

[97] ECF No. 140 at 21 n.170 (citing *In re Torres*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007); *Montgomery v. PNC Bank, N.A.*, 2012 WL 3670650 (N.D. Cal. 2012)).

[98] *Id.* at 11 n.79 & 80 (citing Binder's Report, ECF No. 142-23 at 8, ¶ 18).

[99] *In re Torres*, 367 B.R. at 480.

[100] *Id.*

[101] *Id.* at 483.

[102] *Id.*

[103] *Id.* at 480.

dismissed them.[104]  As for the debtors' claims that the bank violated the discharge injunction, the court rejected the bank's contention that its refusal to update previously supplied information, without more, could never constitute an act to collect a debt.  The bankruptcy court noted that other courts "had no difficulty recognizing that false or outdated reporting to [CRAs], even without additional collection activity, can constitute an act to extract payment of a debt in violation of [11 U.S.C. § 524(a)(2)]."[105]  After analyzing several cases, the court confirmed "[i]t is true, of course, that a bankruptcy discharge does not send a debt into the equivalent of *1984*'s 'memory hole.'"[106]  But, the court determined, "a credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor," i.e., "that the debtor has not received a discharge, that [the debtor] has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable."[107]  So the bankruptcy court allowed the debtors to proceed on their claims that the bank's refusal to act violated the discharge injunction.

At first blush, *In re Torres* appears to favor Cardinali's position, but a closer look at our facts proves it inapplicable.  Most significantly and unlike the credit reports for the *In re Torres* debtors, the evidence here shows that Experian was already reporting—before Cardinali's dispute letter—that his debt to DFS had been discharged in bankruptcy.  The August 2015 report states that the "[s]tatus" for Cardinali's DFS account is "[d]ischarged through [b]ankruptcy Chapter 7[,]" the "[d]ate of status" for that information is listed as "Apr 2012[,]" the month of

---

[104] *Id.* at 481–82.

[105] *Id.* at 486.

[106] *Id.* at 487.

[107] *Id.* at 487–88.

his bankruptcy discharge, and the "[a]ccount [h]istory" states "[d]ebt included in Chapter 7 [b]ankruptcy on Apr 30, 2012[,]" the exact date of his discharge order.[108]  The report also lists the "[r]ecent balance" as "$0 as of July 2015."[109]  Experian's addition of the "your statement" section to the second October 2015 report emphasized its reporting that Cardinali's debt had been discharged in his bankruptcy case in April 2012.[110]

*In re Torres* explains why this distinction matters: "[a] credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy."[111]  "The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation.  Nothing is now due.  A past due debt represents a delinquent but legally enforceable obligation that must be resolved."[112]  Because Cardinali's credit report clearly and repeatedly stated that his debt to DFS had been discharged in his Chapter 7 bankruptcy case, his reliance on *In re Torres* is misplaced.

This reporting distinguishes Cardinali's other authority, too.  In *Montgomery v. PNC Bank*, the consumer claimed that PNC Bank's reporting was inaccurate because the payment-history grid reflected that he "was at least 180 days overdue on his PNC loan from June 2009 through September 2010" but "no delinquencies should have been reported on the account after

---

[108] ECF No. 142-4 at 11.

[109] *Id.*

[110] *See* ECF No. 142-6 at 18 (providing: "ACOUNT INCLUDED IN BK7 FILED 01/26/2012 AND DISCHARGED 4/30/2012- DOCKET NO 12- 10854- BAM IN THE DISTRICT FOR NEVADA").

[111] *In re Torres*, 367 B.R. at 488.

[112] *Id.*

June 2010, when his PNC debt was discharged through bankruptcy."[113]  The district court found that this was enough to survive dismissal because PNC hadn't offered any authority suggesting that Montgomery's position was "incorrect as a matter of law" and the court was obligated at the dismissal stage to "accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff."[114]

But Cardinali's case has proceeded to summary judgment, so he faces a greater burden than the consumer did in *Montgomery*.  Cardinali's claim is also quite different from that consumer's claim.  Here, it is undisputed that nothing was reported on DFS account for the month of Cardinali's bankruptcy discharge (April 2012) or any month thereafter, so the gravamen of Cardinali's claim is that it's inaccurate to report delinquencies like charge offs after a bankruptcy petition is filed—as opposed to after the debt has been formally discharged by the bankruptcy court, which is what the consumer claimed in *Montgomery*.  Cardinali's authorities don't support his argument that the October 2015 credit reports are inaccurate because Experian reported charge-off notations in the DFS account's payment-history grid for the two months that his bankruptcy case was pending before his liability for that debt was discharged.

### 2. Persuasive authorities have determined on similar facts that post-petition delinquency reporting isn't inaccurate.

Many district courts in this circuit have concluded, some as a matter of law, that it is neither misleading, inaccurate, nor incomplete to report delinquent debts during the pendency of a bankruptcy case before those debts are discharged.[115]  These courts have explained that "the

---

[113] *Montgomery*, 2012 WL 3670650, at *2–3.

[114] *Id.* at *3.

[115] *Devincenzi v. Experian Info. Sols., Inc.*, 2017 WL 86131, at *5–7 (N.D. Cal. Jan. 10, 2017) (collecting cases from N.D. Cal. concerning debts discharged in bankruptcies under Chapters 7 and 13); *Mensah v. Experian Info. Sols., Inc.*, 2017 WL 1246892, at *6 (N.D. Cal. Apr. 4, 2017)

legal status of a debt does not change until the debtor is discharged from bankruptcy."[116]  Other courts have found that "[t]he automatic stay does not render an otherwise accurate report of a delinquency inaccurate for the purposes of the FCRA."[117]  For example, the debtor in *In re O'Connell* moved for an order requiring his creditors and the CRAs "to report that there is 'no balance due' on certain debts discharged in his chapter 7 proceeding."[118]  In denying the motion, the bankruptcy court explained, "[a]ll that a bankruptcy discharge does, in 'releasing' a debtor's personal liability[,] is to *bar* a creditor's right to pursue such *in personam* mode of enforcing its debt."[119]  "But what a debtor cannot escape is his or her own past history of unpaid debt.  Those blemishes remain on a debtor's credit record for a period of time, sometimes as long as ten years."[120]  "Thus, a creditor's derogatory remarks, to its credit bureaus, is not inaccurate if what it is reporting are simply the *facts* of non-payment and prior delinquencies."[121]

I find these cases persuasive and adopt their reasoning.  Following their guidance, and because Experian reported that Cardinali's debt to DFS had been discharged through Chapter 7 bankruptcy on April 30, 2012, and had a balance of $0, I determine that Cardinali has not demonstrated that Experian's reporting charge-off notations in the payment-history grid during

---

(collecting same and other N.D. Cal. cases and two cases from this district: *Abeyta v. Bank of Am.*, 2016 WL 1298109 (D. Nev. Mar. 31, 2016); *Polvorosa v. Allied Collection Serv., Inc.*, 2017 WL 29331 (D. Nev. Jan. 3, 2017)).

[116] *Devincenzi*, 2017 WL 86131, at *6 (citing 11 U.S.C. § 1328; *Blakeney v. Experian Info. Sols., Inc.*, 2016 WL 4270244, at *6 (N.D. Cal. Aug. 15, 2016)).

[117] *Mortimer v. Bank of Am., N.A.*, 2013 WL 1501452, at *10 (N.D. Cal. Apr. 10, 2013).

[118] *In re O'Connell*, 2008 WL 5046496, at *1 (Bankr. D. Ariz. Oct. 20, 2008) (collecting authorities).

[119] *Id.* (collecting authorities).

[120] *Id.*

[121] *Id.*

the pendency of Cardinali's bankruptcy case was inaccurate. I also determine that Cardinali has not raised a triable issue of fact about the accuracy of this reporting.

### 3.    *Cardinali's expert's opinion doesn't alter this determination.*

Cardinali also relies on the report of his expert, Dean Binder, to establish that reporting delinquencies during the pendency of a bankruptcy case is inaccurate. Binder's report takes the form of a declaration, and his curriculum vitae is attached as an exhibit.[122] Cardinali points to Binder's opinion that "[a]ny negative or balance reporting on this unsecured debt after the filing date of the Chapter 7 bankruptcy (1/26/2012) is inaccurate and inconsistent with the Orders entered by the Bankruptcy Court."[123] Binder explained in deposition that what he meant by "Orders entered by the Bankruptcy Court" (he hadn't reviewed any orders that had been entered in Cardinali's bankruptcy case) was "the basic, general knowledge of an automatic stay."[124]

Binder's opinion is a legal conclusion. I don't consider his opinion on this issue because it is impermissible for an expert to "give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law."[125] It is also an incorrect legal conclusion according to many district courts in this circuit, including this one. It seems wrong to Binder, too, who confirmed in deposition that filing a bankruptcy petition didn't change the fact that Cardinali's DFS account "was a charge[-]off account."[126]

---

[122] ECF No. 142-23 at 4–19 (Binder's Report and CV).

[123] *Id.* at 8, ¶ 18.

[124] ECF No. 149-2 at 58:02–23 (Binder's Dep.).

[125] *Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.2d 1051, 1058 (9th Cir. 2008) (emphasis omitted) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); Fed. R. Evid. 702)).

[126] ECF No. 149-2 at 52:23–53:05.

Even if Binder's opinion simply "embrace[d] an ultimate issue" and thus wasn't "objectionable"[127] on this basis, the record doesn't demonstrate that he has the knowledge, skill, experience, training, or education to offer an opinion that embraces bankruptcy law. Though Binder professed in deposition to have "knowledge of" and "expertise with bankruptcy[,]"[128] he isn't a lawyer and his curriculum vitae speaks only to his experience with "credit reporting and scoring . . . ."[129] There is no evidence about Binder's educational history, but Binder declares that "[b]ecuase of [his] work at Fair Issac and Equifax, [he's] well-versed on credit scoring, scoring analysis[,] and the use of credit scoring and credit models in the financial[-]services industry."[130] Binder revealed in deposition that his knowledge about bankruptcy law is extremely limited—he "[doesn't] read court cases"[131]—and his experience with CRAs reporting pre-discharge deficiencies is murky[132] and misses the relevant time frame.[133] Binder appears to base his conclusions on his personal opinions[134] and unsupported speculation.[135] But because

---

[127] Fed. R. Evid. 704(a).

[128] ECF No. 149-2 at 23:24–24:01, 47:01–02, 78:16–21.

[129] ECF No. 142-23 at 15–16; *accord* ECF No. 149-2 at 42:16–19 (objecting to question because Binder "is not a lawyer").

[130] ECF No. 142-23 at 7, ¶ 12.

[131] ECF No. 149-2 at 22:8–11.

[132] *Id.* at 54:04–19 (Binder testified that Experian had a policy of reporting pre-discharge deficiencies but he's "unfamiliar during [his] time with Equifax that Equifax had that standard" yet he can "confidently say it's not Equifax's or TransUnion's standard now to report that" because he's "never seen it").

[133] *Id.* at 24:23–25:01, 78:16–21 (Binder testified that his opinions are based on his "expertise with bankruptcy[,]" how Equifax reported pre-discharge delinquencies when he worked there in the '90s, and his knowledge that CRAs don't report those deficiencies "now").

[134] *Id.* at 66:21–24, 42:01–05, 64:15–25 (Binder repeatedly testified that he's unfamiliar with the concept of pre-discharge delinquency reporting, so he'd be confused by that reporting if he were a lender).

[135] *See, e.g.*, *id.* at 64:07–10.

23

what Binder offers on this issue is an impermissible legal conclusion, I don't reach the question of whether his testimony on this topic should be excluded.

### d.  *Experian's reporting of multiple charge-off notations*

Cardinali tacks on the argument that Experian's reporting of charge-off notations in the DFS account's payment-history grid for multiple months is materially misleading because those notations suggest that the account "had been charged off more than once, when in fact it had not been."[136]  To support this proposition, Cardinali relies on Binder's opinion that reporting "multiple consecutive charge offs in the payment history field can be misleading for consumer and current or prospective creditors."[137]  But Binder doesn't explain the basis for his conclusion, i.e., why a potential creditor could be misled by these notations, making his opinion valueless. Binder testified in deposition that the term charge off is well understood in the credit industry to mean that the lender has "written [the debt] off" as a "profitable loss."[138]  He also testified that a charge-off is a one-time event that can't occur multiple times and is the last thing that can happen to an account unless it is sold for collections or discharged in bankruptcy.[139]  But Binder never bridges the intellectual gap between these well-understood facts and his conclusion that a potential creditor could be misled by multiple charge-off notations in the payment-history grid to believe that a debt had been charged off more than once—or more recently than it had been. Binder testified that he's not aware of anyone being misled in this way and that it would require misreading the credit report.[140]  When Binder offered this same opinion in *Barakat v. Equifax*

---

[136] ECF No. 140 at 21.

[137] ECF No. 142-23 at 9, ¶ 21.

[138] ECF No. 149-2 at 44:18–45:21.

[139] *Id.* at 46:15–25.

[140] *Id.* at 90:05–24.

*Info. Servs, LLC*, the magistrate judge excluded his testimony as speculative.[141]  Though Binder has since learned to not expressly testify that he's speculating,[142] as Experian points out,[143] he doesn't offer any other basis for his opinion here.

But I don't reach the question of whether Binder's testimony on this issue should be excluded; rather, I consider only whether it creates a triable issue of fact or conclusively establishes a material fact.  Cardinali points out that U.S. District Judge Kent Dawson recently stated in another case that this evidence "seems to support" the theory that multiple charge offs are inaccurate.[144]  But Judge Dawson, who was determining a motion for judgment on the pleadings, expressly declined to "consider outside evidence at the risk of converting" the motion into one for summary judgment.[145]  Rather, he determined that, "[d]ue to a conflict between the case law and the proffered evidence[,] it is as least plausible that the appearance of multiple charge-offs on a consumer report could cause a prospective creditor to deny" credit to the consumer, so he allowed the plaintiff's claim to proceed past dismissal.[146]

The bar for Cardinali to obtain summary judgment on this issue is far higher than plausibility, and Binder's testimony doesn't clear that bar because he doesn't articulate the basis

---

[141] *Barakat v. Equifax Info. Servs., LLC*, 2017 WL 3278202, at *5–6 (E.D. Mich. Aug. 2, 2017).

[142] ECF No. 149-2 at 64:11–14 ("Q. And that's just speculation on your part that is possible, right?  A. I don't know.  I thought not saying I'm speculating – –"), 70:25–71:03 ("Q. You were speculating that it's possible someone could have, right?  A. Well, I haven't speculated that.  Again, my opinion is not speculating at all.").

[143] ECF No. 149 at 11.

[144] ECF No. 203-1 at 4.  I grant Cardinali's motion to supplement his summary-judgment motion with this authority.  ECF No. 203.  I likewise grant Experian's motion to supplement its summary-judgment motion with contrary authority.  ECF No. 205 (providing U.S. District Judge James Mahan's recent order granting Experian's motion to dismiss in *Steinmetz v. American Honda Finance, et al.*, 2019 WL 4415090 (D. Nev. Sept. 19, 2019)).

[145] *Harroff v. Experian Info. Servs., Inc.*, 2017 WL 4168729, at *3 (D. Nev. Sept. 3, 2019).

[146] *Id.* at *4.

for his conclusion. Binder's testimony also doesn't raise a factual dispute because the strongest inference that can be drawn from it is that it's possible for a potential creditor to be misled by this reporting—not, as Cardinali has the burden to show, that this type of reporting can be "expected" to adversely affect credit decisions.[147] Because Binder's testimony doesn't move the needle on whether Experian's reporting of multiple charge-off notations is inaccurate, Cardinali has failed to meet his burden on either side of the summary-judgment analysis for this theory of inaccuracy.

###### e.    *Post-petition delinquency reporting vis-à-vis industry standards*

Finally, Cardinali argues that Experian's reporting of charge-off notations during the months that his bankruptcy case was pending is materially misleading because it violates the credit industry's reporting standards—specifically the Metro 2 format laid out in the 2015 CRRG. Cardinali points to the part of this guide that tells furnishers to report code "D," which stands for "no payment history available this month," for all months between the filing of a bankruptcy petition and the resolution of that bankruptcy case.[148] It is undisputed that Experian reported "CO" for "charge off" in the payment-history grid for February and March 2012.

Cardinali argues that a CRA's failure to follow industry guidelines is "materially misleading where (1) the CRA adopts the standard, (2) the CRA deviated from the standard, and [(3)] this 'deviation might adversely affect credit decisions—in other words, that entities would have expected the defendant CRA to report in compliance with the Metro 2 guidelines."[149]

---

[147] *See, e.g.*, ECF No. 149-2 at 88:10–13 (Binder acknowledges in deposition that consecutive, multiple charge-off reporting "does not" negatively affect credit scoring.)

[148] ECF No. 142-16 at 5 (FAQ 27(a): "How should an account be reported when all borrowers associated to the account have filed Bankruptcy Chapter 7, 11, or 12?").

[149] ECF No. 140 at 21–22 (brackets omitted) (quoting *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016)).

1 These elements are culled from *Nissou-Rabban v. Capital One Bank (USA), N.A.*, in which the

2 United States District Court for the Central District of California explained the burden for a

3 plaintiff who claims that his credit report is inaccurate because the reporting deviated from Metro

4 2's guidelines.[150]  The *Nissou-Rabban* court stated these elements in the context of deciding an

5 FRCP 12(b)(6) motion to dismiss the plaintiff's FCRA claims.[151]  But, as the United States

6 District Court for the Northern District of California noted in *Conrad v. Experian Information*

7 *Solutions, Inc.*, "many courts in [its] district have distinguished or disagreed with *Nissou-*

8 *Rab[b]an*[,]" including finding that case, "at most . . . stands for the proposition that a furnisher

9 [who] reports delinquent debts during the pendency of a bankruptcy should also report the fact

10 that a bankruptcy is pending so that creditors know that those delinquent debts may be

11 discharged in the future."[152]  The *Conrad* court expressed the approach that has been adopted by

12 a majority of district courts in this circuit.  Cardinali's claim fails as a matter of law under this

13 majority approach because, as I determined above,[153] all his Experian-issued credit reports state

14 that his debt to DFS had been discharged through his Chapter 7 bankruptcy case on April 30,

15 2012, and list a $0 balance for that account.[154]

16     Cardinali's motion also falters at the final element of the *Nissou-Rabban* test because his

17 complete analysis of that element is conclusory.  He argues merely that "[b]y continuing to

18

19 ---

[150] *Nissou-Rabban*, 2016 WL 4508241, at *5.

20 [151] *Id.* at *1.

21 [152] *Conrad v. Experian Info. Sols., Inc.*, 2017 WL 1739167, at *6 (N.D. Cal. May 4, 2017) (collecting cases) (internal quotation marks omitted) (quoting *Devincenzi*, 2017 WL 86131, at *

22 6).

[153] *See supra* Discussion A(2)(c)(1), (2).

23 [154] ECF Nos. 142-4 at 11 (August 2015 report), 142-6 at 9 (first October 2015 report), 142-6 at 18 (second October 2015 report).

report the post-petition charge-off notations, Experian deviated from the CRRG reporting guidelines, and its failure was likely to influence future credit decision-makers."[155]  In a footnote to this statement, Cardinali refers the reader back to ¶ 20 of his statement of undisputed material facts where he reiterates that Experian's reporting didn't conform to the CRRG, explains what the CRRG is, states that Experian "takes part in developing" it, and claims that "Experian's representatives have stated [in other cases] that Experian follows [the CRRG] with respect to reporting bankruptcies."[156]  Cardinali restates in ¶ 20 what the CRRG says Experian should have reported for February and March 2012, and he concludes by pointing out that "[u]nder the CRRG, regardless of where the dispute originates, the [f]urnisher must respond."[157]

What Cardinali doesn't provide is any analysis or evidence to demonstrate why a potential creditor would have expected Experian to conform its reporting to Metro 2's standards. Also missing from Cardinali's series of conclusions is any analysis or evidence to demonstrate why Experian's failure to conform its reporting to those standards can be expected to adversely affect credit decisions even when Experian reported that Cardinali's debt to DFS had been discharged in his Chapter 7 bankruptcy case on April 30, 2012, and had a $0 balance.[158] Cardinali hasn't discharged his burden to show that Experian's reporting of charge-off notations instead of Metro 2's no-data notations was patently incorrect or misleading in such a way and to

---

[155] ECF No. 140 at 22.

[156] *Id.* at 11–12, ¶ 20.

[157] *Id.* at 12, ¶ 20.

[158] Cardinali's expert contributes nothing to this discussion: likewise concluding that "Experian's reporting was inaccurate in that it did not comply with its own Consumer Data Industry Association's Metro 2 reporting standards (Credit Reporting Resource Guide/ CRRG), which provides industry guidance for credit reporting and FCRA compliance."  ECF No. 142-23 at 8, ¶ 19.

such an extent that it can be expected to adversely affect credit decisions.  He also hasn't raised a genuine factual dispute about these issues.

The upshot of this order on the parties' summary-judgment motions is that Cardinali hasn't demonstrated that any information contained in the October 2015 reports is patently incorrect or so misleading that it can be expected to adversely affect credit decisions.  He also hasn't raised a genuine factual dispute that either report contains inaccurate information.[159] These failures are fatal to Cardinali's first claim alleging that Experian violated §§ 1681e and 1681i of the FCRA, and because his second claim seeks equitable relief for the same alleged statutory violations, it falls with the first one.  I therefore deny Cardinali's motion for summary judgment and grant Experian's motion for the same relief on both claims.

## B. Motions mooted by the summary-judgment ruling [ECF Nos. 141, 166, 183, 190–92]

Because I find that Cardinali's claims fail as a matter of law, I deny as moot his motion for class certification[160] and Experian's motion to supplement its response to that motion.[161]  I did not reach the issue of whether H&K qualifies as a credit-repair organization in deciding Experian's summary-judgment motion, so I deny as moot Experian's motion to supplement the record with newly discovered evidence about that issue.[162]

With no pending claims for relief, there isn't a continuing reason for discovery in this case, so I deny as moot non-party H&K's objection to Magistrate Judge Koppe's order

---

[159] For this reason, I need not—and do not—reach the other arguments in Experian's summary-judgment briefs.

[160] ECF No. 141.

[161] ECF No. 166.

[162] ECF No. 191.

compelling it to produce documents responsive to Experian's request[163] and its motion for leave to file a reply in support of that objection.[164] For this same reason, I also deny as moot Experian's motion for monetary sanctions against Cardinali's attorneys for their purportedly abusive discovery practices.[165] But I deny it without prejudice to Experian's ability to reurge that request in conjunction with a motion for attorney's fees under LR 54-14.[166]

## C.    Motions to seal or unseal judicial records [ECF Nos. 144, 156, 188, 200]

Finally, I turn to the parties' motions to redact and seal or unseal judicial records that they've provided with their summary-judgment and discovery-dispute briefs.[167] "The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[168] "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court records.'"[169] "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[170] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[171]

---

[163] ECF No. 183.

[164] ECF No. 192.

[165] ECF No. 190.

[166] This without-prejudice denial should not be construed as a ruling on the merits of any motion for that relief.

[167] ECF Nos. 144 (Cardinali), 156 (same), 188 (Experian), 200 (H&K).

[168] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[169] *Id.* at 1119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[170] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[171] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

"To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[172]  The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a non-dispositive motion.'"[173]  "Under the exception, 'the usual presumption of the public's right is rebutted[,]'" so "a particularized showing of 'good cause' under [FRCP] 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[174]

### 1.    Cardinali's Exhibits 1–3, 5–6, and 27

I have reviewed exhibits 1–3, 5–6, and 27 in camera, and I conclude that Cardinali has shown compelling reasons to redact portions of these judicial records because they contain personal identifiers for individuals like birthdates, phone numbers, addresses, SSNs, taxpayer numbers, and credit- and bank- account numbers.  These judicial records consist of excerpts of Cardinali's bankruptcy petition, discharge order, dispute letter, credit reports, and deposition transcript.  Though Cardinali has placed his financial history at issue in this litigation, balancing the public's need to access information about Cardinali's financial history against his need to maintain the confidentiality of his personal information weighs in favor of redacting these judicial records.  Cardinali correctly points out that these exhibits are also subject to redaction under LR IC 6-1 and FRCP 5.2.  Thus, I grant Cardinali's motion to redact his exhibits 1–3, 5–6, and 27.

---

[172] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[173] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[174] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Foltz*, 331 F.3d at 1135, 1138).

## 2. Cardinali's Exhibits 7–12, 14, 16–17, 19, and 46

I also have reviewed exhibits 7–12, 14, 16–17, 19, and 46 in camera, and I conclude that the parties have shown compelling reasons to seal these judicial records. These judicial records consist of logs and reports that Experian generated about the maintenance of its credit file for Cardinali. Mary Methvin declares that these judicial records contain enough codes and other information about Experian's system for matching consumer information that a competitor could reverse-engineer the rules governing that system, which Experian spent millions of dollars and many years to create.[175] These judicial records also consist of policy and procedural manuals and a spreadsheet of internal information about potential class members in this case. Methvin explains that these records are not publicly disclosed, were costly to create, and contain enough detail about Experian's computer systems and software that a competitor could use them to its own advantage and identity thieves could use them to develop methods to circumvent Experian's protections.[176] Finally, these records consist of the declaration of Experian employee Kimberly Cave, who breaks down the various computer systems that Experian maintains for storing and accessing consumer information and the what those systems report about the matters at issue here. Though Experian's policies, practices, and systems are at issue in this litigation, balancing the public's need to access general information about those matters against Experian's need to maintain the confidentiality of the details and specifics of those matters favors sealing these judicial records. Thus, I grant Cardinali's motion to seal exhibits 7–12, 14, 16–17, 19, and 46.

. . .

. . .

---

[175] ECF No. 147-1 at 4, ¶¶ 7–9.

[176] *Id.* at 5–6, ¶¶ 12–17.

### 3. Cardinali's Exhibit 29

Cardlinal initially moved to seal exhibit 29[177] but later moved to unseal it because Experian, after its review, declined to designate any part of it as confidential.[178] I construe Cardinali's motion to unseal this exhibit as a motion to withdraw it from his motion to seal, grant him that relief, and direct the Clerk of Court to unseal ECF No. 143-20.

### 4. Cardinali's Exhibits 22, 25–26, and 30

I have reviewed exhibits 22, 25–26, and 30 in camera, and I conclude that Cardinali has shown compelling reasons to redact parts of these judicial records. These judicial records consist of declarations, deposition testimony, and expert reports that include personal identifiers for Cardinali and non-party consumers and quote from Experian's materials that I have already found compelling reasons exist to seal. Thus, I grant Cardinali's motion to redact exhibits 22, 25–26, and 30.

### 5. Experian's Exhibit N

Both parties filed redacted versions of Cardinali's expert's report.[179] Paragraph 22 of this report includes a screen shot from one of Experian's non-public procedure manuals. When Cardinali filed this report, he redacted only the screen shot from ¶ 22, not Binder's explanatory sentence that proceeds it, and he sought leave to make this redaction.[180] When Experian filed this report, it redacted the entirety of ¶ 22 and didn't seek leave to do so. Cardinali cries foul and

---

[177] ECF No. 144 at 4 (the deposition transcript of Experian's expert Marsha Courchane).

[178] ECF No. 156.

[179] ECF Nos. 142-23 (Cardinali), 146-3 at 178–184 (Experian). Cardinali also filed an unredacted copy of this exhibit under seal. ECF No. 143-16.

[180] ECF No. 143-16 at 9, ¶ 22.

moves to unseal Experian's exhibit.[181]  Experian responds that there isn't anything to "unseal"

because it didn't file an unredacted version of the exhibit, and it complains that Cardinali's

attorneys are being abusive.[182]  That this trifling dispute mushroomed into motion practice

reflects poorly on counsel for both sides and, unfortunately, is characteristic of this case.

Cardinali's redacted version of this report provides the public with access to the sentence that

Experian redacted from it, so Cardinali's motion to unseal Experian's version is denied.

### 6.    Experian's Exhibits A, B, and C

I have reviewed Experian's exhibits A, B, and C in camera, and I conclude that non-party

H&K has shown good cause exists to seal these judicial records and to redact references about

their contents from the parties' discovery-dispute briefs.  These judicial records consist of

agreements between H&K and Cardinali regarding his legal representation for the matters at

issue in this case.  These judicial records also consist of emails between H&K and a third-party

vendor about H&K's marketing materials.  These records are the subject of a discovery dispute

that has been mooted by the determination that Cardinali's claims fail as a matter of law.  I did

not reach the merits of the issue that these judicial records pertain to in deciding the summary-

judgment motions.  Thus, I grant Experian's and H&K's motions to seal these judicial records

and redact reference about their contents from the parties' briefs.

### Conclusion

Cardinali has not demonstrated that any information in the October 2015 reports is

patently incorrect or misleading in such a way and to such an extent that it can be expected to

adversely affect credit decisions.  He also has not raised a triable issue of fact about the accuracy

---

[181] ECF No. 156.

[182] ECF No. 165.

34

of the information in those reports.  These failures are fatal to both of Cardinali's claims, entitles Experian to summary judgment, and moots most of the other pending motions.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Cardinali's motion for summary judgment **[ECF No. 140] is DENIED** and Experian's motion for summary judgment **[ECF No. 146] is GRANTED.**

IT IS FURTHER ORDERED that Cardinali's motion to supplement his summary-judgment motion with authority **[ECF No. 203]** and Experian's motion to supplement its summary-judgment motion with authority **[ECF No. 205] are GRANTED.**

IT IS FURTHER ORDERED that Cardinali's motion for class certification **[ECF No. 141]**, Experian's motion to supplement its response to certification **[ECF No. 166]**, non-party H&K's objection to Magistrate Judge Koppe's document-production order **[ECF No. 183]**, Experian's renewed motion for sanctions **[ECF No. 190]**, Experian's motion to supplement its summary-judgment motion with authority and briefing **[ECF No. 191]**, and H&K's motion to file a reply supporting its objection **[ECF No. 192] are DENIED as moot.**

IT IS FURTHER ORDERED that Cardinali's motion to unseal judicial records **[ECF No. 156] is GRANTED in part.**  The Clerk of Court is directed to **UNSEAL ECF No. 143-20.**  The motion is **DENIED** in all other respects.

IT IS FURTHER ORDERED that Cardinali's motion to redact and seal **[ECF No. 144]**, Experian's motion to redact and seal **[ECF No. 188]**, and H&K's motion to redact and seal **[ECF No. 200] are GRANTED.**  The Clerk of Court is directed to maintain the seal on these judicial records.

. . .

. . .

Finally, IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER JUDGMENT in favor of Experian and against Cardinali and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
September 26, 2019